1   **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9   Rosalee Gonzalez,                         No. CV-20-00757-PHX-DWL

10                  Plaintiff,                 **ORDER**

11   v.

12   US Human Rights Network, et al.,

13                  Defendants.

14

15              On July 29, 2022, the Court issued a lengthy order resolving the parties' cross-

16   motions for summary judgment.  (Doc. 128.)  Among other things, the Court granted

17   summary judgment in favor of USHRN on Dr. Gonzalez's wrongful termination/retaliation

18   claim in Count One.  (*Id.* at 4-18.)

19              Now pending before the Court is Dr. Gonzalez's motion for reconsideration of that

20   component of the summary judgment order.  (Doc. 129.)  The Court solicited a response

21   from USHRN (Doc. 130) and the motion is now fully briefed.  (Docs. 131, 132.)[1]  For the

22   following reasons, the motion is denied.

23                          **LEGAL STANDARD**

24              "The Court will ordinarily deny a motion for reconsideration of an Order absent a

25   showing of manifest error or a showing of new facts or legal authority that could not have

26   been brought to its attention earlier with reasonable diligence."   LRCiv. 7.2(g)(1).

27   Reconsideration is an "extraordinary remedy" that is available only in "highly unusual

28   _____

[1]      USHRN's request for oral argument is denied because the issues are fully briefed
and argument would not aid the decisional process.  *See* LRCiv 7.2(f).

circumstances." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "Motions for reconsideration are disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003).

## DISCUSSION

In the summary judgment order, the Court stated that "even if Dr. Gonzalez establishes a prima facie case of wrongful termination . . . USHRN may avoid liability by identifying a legitimate, non-retaliatory reason for the termination decision. If USHRN articulates such a reason, Dr. Gonzalez has the burden of showing the proffered reason is pretextual." (Doc. 128 at 7-8, citations omitted.) The Court went on to conclude that USHRN had articulated six legitimate, non-discriminatory reasons for terminating Dr. Gonzalez (*id.* at 11-14) and that Dr. Gonzalez had not met her burden of showing those reasons were pretextual (*id.* at 14-18). The Court's pretext analysis focused on two of the reasons that USHRN had articulated for the termination decision—*first*, the "failure to secure future funding"; and *second*, the "spate of claims by former employees/mismanagement of subordinates"—and the Court concluded in both instances that Dr. Gonzalez had failed to make the required "specific and substantial showing that the USHRN board members lacked an honest belief in this rationale." (*Id.* at 18.)

1.      Dr. Gonzalez's first reconsideration argument is that she "provide[d] sufficient evidence to show a genuine issue of material fact existed on whether USHRN's future-funding rational was pretextual" and that the Court committed manifest error by concluding otherwise. (Doc. 129 at 6-9.) More specifically, Dr. Gonzalez argues that the Court erred by looking to USHRN's profit-and-loss statements from 2017-19 when assessing USHRN's funding situation because there is no evidence that the board members considered those documents before making the termination decision. (*Id.* at 6-7.) According to Dr. Gonzalez, this approach violated *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), because it "improperly shifted the pretext inquiry to a

question of whether the future-funding rationale *could have been* a basis for Dr. Gonzalez's termination, rather than[] an inquiry into the 'true reason' for her termination," and/or "reframed the issue of pretext by implicitly inferring in USHRN's favor and determining, without any factual support, that . . . USHRN's board members had actual knowledge of the profit and loss statements and. . . actually relied on those documents when determining to terminate Dr. Gonzalez." (*Id.* at 8.)  Dr. Gonzalez argues that, because the "only evidence in the record detailing the information of future funding the USHRN's board members were aware of at the time they decided to terminate her was the [email indicating] that Dr. Gonzalez had secured an increase in funding" from one donor, and because there was also "unrebutted evidence that USHRN's board members had abandoned their past practice of assisting in fundraising," it follows that her "evidence and the reasonable inferences this Court must draw from it are necessarily 'substantial' (when compared to USHRN's lack of any corroborating evidence and post-hoc attempt to change its rationale) and show USHRN's assertion of the future-funding rationale is not credible and is unworthy of credence." (*Id.* at 8-9, citation omitted.)

These arguments lack merit.  As an initial matter, Dr. Gonzalez incorrectly states that the summary judgment order relied on USHRN's profit-and-loss statements from 2017-19 as evidence supporting USHRN's position.  (Doc. 129 at 5 [faulting the Court for "rel[ying] on those unsupportive profit and loss statements"]; Doc. 132 at 4-5 ["[T]he Order explicitly engaged in a comparative analysis relying on USHRN's 2017 through 2019 profit and loss statements . . . [and] the Order assumes these documents were the basis for the Board's 'overall expected budget' and 'honest belief' in the future-funding rationale."].)  But the order did the opposite.  It stated that, to the extent USHRN was seeking to rely on those financial statements to validate its future-funding rationale, such reliance was misplaced because the statements only addressed historical funding, not future funding.  (Doc. 128 at 15-16 ["Although these reports reflect that USHRN's funding from 'contributed support' decreased each year that Dr. Gonzalez was serving as executive director . . . they contain no information about USHRN's funding prospects for 2020 and

1   beyond.  It is therefore difficult to see how the reports could be viewed as corroborating

2   the 'future funding' rationale for the termination decision.").

3          Nevertheless, the summary judgment order explained that USHRN's failure to

4   affirmatively establish the validity of its future-funding rationale was, in the final analysis,

5   irrelevant because "the outcome is dictated by the burden of proof" and "it is Dr.

6   Gonzalez's burden to show that USHRN's 'future funding' rationale is pretextual.  She

7   must do so with specific and substantial evidence.  Furthermore, it is not enough for Dr.

8   Gonzalez to show that the rationale is assailable (*i.e.*, she had, in fact, done an adequate job

9   of securing future funding).  Instead, she must go further and show that USHRN didn't

10  honestly believe its proffered reason." (*Id.* at 16-17.)  The Court concluded that Dr.

11  Gonzalez had not met this burden because she had merely identified evidence "that

12  USHRN's board members were aware that Dr. Gonzalez had succeeded in persuading one

13  donor to increase its annual contribution from $100,000 to $200,000, which only

14  represented a small fraction of the overall expected budget.  There is no evidence, let alone

15  specific and substantial evidence, from which a reasonable juror could conclude that the

16  USHRN board members lacked an honest belief in the 'future funding' explanation they

17  consistently provided as a justification for the termination decision." (*Id.* at 17.  *See also*

18  *id.* at 16-17 ["[T]he fact that one donor was planning to increase its 2020 donation from

19  $100,000 to $200,000 does not, without more, show that Dr. Gonzalez was succeeding in

20  securing future funding—it is a solitary data point that lacks significance without other

21  information."].)

22         Nothing in Dr. Gonzalez's motion causes the Court to conclude this analysis was

23  wrong, let alone manifestly erroneous.  This is an unusual case in that neither side

24  submitted competent evidence as to whether the future-funding rationale for the

25  termination decision, which USHRN has consistently articulated,[2] was factually supported.

26  _____

[2]        As noted in the summary judgment order (Doc. 128 at 11-12), USHRN first
27  articulated the future-funding rationale during the September 4, 2019 phone call
    announcing the anticipated termination decision, raised this rationale again in the October
28  31, 2019 letter confirming the termination decision, raised this rationale again during its
    Rule 30(b)(6) deposition in this case (in response to questioning about the basis for the
    termination decision), and raised this rationale again in its summary judgment motion.

Dr. Gonzalez argues this should cut against USHRN for summary judgment purposes—among other things, she contends it creates a jury question on whether the future-funding rationale was the "true reason" for her termination (Doc. 129 at 8)—but this argument misperceives the applicable burdens of proof and production.

The Supreme Court's decision in *Burdine*, which Dr. Gonzalez incorrectly characterizes as a case supporting her position, confirms that the summary judgment order properly applied those burdens here.  In *Burdine*, the employer in a Title VII gender-discrimination case argued it had a legitimate and non-discriminatory reason for terminating a female employee—that "the person retained in her stead had superior objective qualifications for the position." 450 U.S. at 260.  However, the employer "failed to introduce comparative factual data" to substantiate this assertion.  *Id.* at 257 n.11.  As a result, the Fifth Circuit concluded the employer's evidence was insufficient to demonstrate the existence of a legitimate, non-discriminatory reason.  *Id.* at 256.  In reaching this conclusion, the Fifth Circuit "adhered to [a rule] it had developed to elaborate the defendant's burden of proof," which was that "the defendant must prove by a preponderance of the evidence that legitimate, nondiscriminatory reasons for the discharge existed."  *Id.*  "The court placed the burden of persuasion on the defendant apparently because it feared that if an employer need only *articulate*—not prove—a legitimate, nondiscriminatory reason for his action, he may compose fictitious, but legitimate, reasons for his actions."  *Id.* at 257-58 (cleaned up).  The Supreme Court reversed, holding that the Fifth Circuit had "misconstrued the nature of the burden that *McDonnell Douglas* and its progeny place on the defendant."  *Id.* at 256.  The Court held that an employer need only "articulate[] lawful reasons for the action" and emphasized that the Fifth Circuit's contrary approach, which "would require the defendant to introduce evidence which, in the absence of any evidence of pretext, would *persuade* the trier of fact that the employment action was lawful," "exceeds what properly can be demanded to satisfy a burden of production."  *Id.* at 257.  Thus, the Court clarified that an employer's burden of production is simply to provide an "explanation of its legitimate reasons [that is] clear and reasonably specific."

*Id.* at 258.  *See also id.* at 256-57 ("[T]he employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons. It is plain that the Court of Appeals required much more: it placed on the defendant the burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff.") (cleaned up).  Although the Court noted that an employer "retains an incentive to persuade the trier of fact that the employment decision was lawful" and thus "normally will attempt to prove the factual basis for its explanation," it stated that such showings are not part of the employer's "formal burden."  *Id.* at 258.

Here, as in *Burdine*, an employer articulated a legitimate and non-discriminatory rationale—actually, six such rationales—for a challenged employment decision.  Although USHRN did not come forward with evidence proving that its future-funding rationale was true, the rationale was still "clear and reasonably specific" and thus sufficient to meet USHRN's burden of production.  As a result, Dr. Gonzalez bore the burden of establishing that USHRN's "proffered explanation for the adverse action is 'unworthy of credence.'" *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (citation omitted).

One way Dr. Gonzalez could have attempted to meet this burden would have been to present evidence that she had, in fact, succeeded in securing future funding for USHRN. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996) (a plaintiff may meet its burden of demonstrating pretext by "produc[ing] enough evidence to allow a reasonable factfinder to conclude . . . that the alleged reason for [the] discharge was false").  Although such a showing may, alone, have been insufficient to meet her burden, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("[I]t is not important whether [the employer's proffered reasons] were objectively false . . . .  Rather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'") (citation omitted), it at least would have been a start.  But Dr. Gonzalez failed to present any evidence concerning USHRN's overall funding picture for 2020 and beyond.  Nor did Dr. Gonzalez present evidence from which a reasonable juror could conclude that USHRN's board members weren't actually concerned about her efforts

to secure future funding—Dr. Gonzalez did not, for example, present substantial evidence concerning the overall success of her past fundraising efforts, from which an inference might be drawn that there was no reason to doubt her prospective fundraising abilities. It follows that Dr. Gonzalez failed to meet her burden of establishing a triable issue of fact as to whether the future-funding rationale was pretextual. *Cf. Nidds*, 113 F.3d at 918 (where plaintiff attempted to demonstrate pretext by establishing the falsity of the employer's proffered reason, but the plaintiff's evidence did not fully address that reason, the evidence did "not raise a genuine issue of material fact" as to pretext and was insufficient to "call[] into question the veracity of [the employer's] explanation").

2.     The summary judgment order also found that Dr. Gonzalez had not met her burden of demonstrating pretext with respect to another of USHRN's proffered reasons for terminating her, which was referred to as the "spate of claims by former employees/mismanagement of subordinates" rationale. The analysis as to that issue was as follows:

> Given this conclusion [that the future-funding rationale was not pretextual], little needs to be said about the additional justifications that USHRN provided for the termination decision, but the Court notes that Dr. Gonzalez has also failed to show pretext with respect to the "spate of claims by former employees/mismanagement of subordinates" rationale. As discussed in more detail in Part II.E below, the undisputed evidence shows that three USHRN employees filed grievances against Dr. Gonzalez in June 2019 raising claims of discrimination, retaliation, and/or improper discharge. The Court has little trouble concluding that engaging in conduct that potentially exposes one's employer to tort litigation is a legitimate and non-discriminatory reason for termination. *Cf. Rizzo v. PPL Serv. Corp.*, 2005 WL 913091, *10 (E.D. Pa. 2005) ("The reasons provided by PPL are that the Plaintiffs . . . could have exposed PPL to sexual harassment litigation. Mr. Gorsky and Mr. Rizzo do not dispute that the reasons given are legitimate and non-discriminatory . . . ."). Dr. Gonzalez's only response is to accuse USHRN of changing its rationale to a focus on "grievances" rather than "legal claims," but this argument is unpersuasive and falls far short of a specific and substantial showing that the USHRN board members lacked an honest belief in this rationale.

(Doc. 128 at 17-18.)

Dr. Gonzalez's second reconsideration argument addresses this portion of the summary judgment order.  Dr. Gonzalez contends that, "[i]n much the same fashion as the Order's analysis of the future-funding rationale, the Order's analysis of the former employees' claims rationale either misstates the question as whether the employees' claims *could have* been rather than were the *actual reason* for Dr. Gonzalez's termination; or infers in USHRN's favor and without support that USHRN actually relied on the claims when it decided to terminate Dr. Gonzalez in September 2019."  (Doc. 129 at 9.)  Dr. Gonzalez also contends that a jury question on pretext necessarily arises with respect to this rationale because (1) it was not raised during the September 4, 2019 call and was mentioned for the first time in the October 31, 2019 letter; (2) USHRN approved the terminations that gave rise to the employees' claims; and (3) there is contemporaneous evidence that USHRN did not believe that Dr. Gonzalez had engaged in insubordination by terminating one of the employees.  (*Id.* at 10-11.)  Dr. Gonzalez summarizes her position as follows: "The evidence shows USHRN did not assert that rationale when terminating Dr. Gonzalez in September 2019; USHRN only asserted the rationale two-months after it made the termination decision and only after Dr. Gonzalez stated she would pursue legal action; USHRN did not cite any contemporaneous evidence showing that rationale actually motivated the termination decision; and there is contemporaneous evidence showing USHRN supporting Dr. Gonzalez's activities, which undermines the credibility that USHRN saw her actions as problematic."  (*Id.* at 14.)

These arguments are unavailing.  As explained in Part 1 above, USHRN met its burden of production by articulating, in a clear and reasonably specific manner, its contention that the termination decision was based in part on the grievances filed by the former employees.  *Bodine*, 450 U.S. at 256-58.  Additionally, and unlike with the future-funding rationale, USHRN presented evidence confirming that the former employees had, in fact, filed the grievances.  That evidence is undisputed.

This backdrop is significant for purposes of the pretext inquiry.  Dr. Gonzalez does not dispute that it would, in general, be legitimate for an employer to terminate a supervisor

for engaging in conduct that led multiple subordinates to file grievances and exposed the employer to potential legal liability.  (Doc. 132 at 8.)  Nor does Dr. Gonzalez dispute that three former employees filed grievances against USHRN, all of which were premised on her alleged misconduct while serving as executive director.  Instead, Dr. Gonzalez's pretext arguments are essentially that (1) the timing and manner in which USHRN articulated the "spate of claims by former employees/mismanagement of subordinates" rationale shows that USHRN did not actually rely on it for purposes of the termination decision, and/or (2) because USHRN acquiesced in the underlying conduct that gave rise to the former employees' grievances, a reasonable juror could find that USHRN did not actually rely on the existence of those grievances as the basis for terminating her.

The first argument fails for the reasons stated in the summary judgment order.  (Doc. 128 at 12-13.)  Even though USHRN did not articulate the "spate of claims by former employees/mismanagement of subordinates" rationale during the September 4, 2019 call, USHRN was permitted to add to its list of justifications over time.  *Cf. Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) ("All of the evidence supporting the employer's proffered reasons came from statements, depositions, and declarations prepared after the employment decision was made and while this litigation was in progress. This alone is not disqualifying.  'Simply because an explanation comes after the beginning of litigation does not make it inherently incredible.'") (citation omitted).  If a later-added justification *conflicts with* or *replaces* an earlier-articulated justification, an inference of pretext may arise, but that was not the case here.  USHRN has consistently maintained the future-funding rationale, which it first articulated during the September 4, 2019 call, and the later-added "spate of claims by former employees/mismanagement of subordinates" rationale is not conflicting because it addresses an entirely different subject matter.  An inference of pretext does not arise in this circumstance.  *See, e.g.*, *Nidds,* 113 F.3d at 918 ("Nidds argues that summary judgment against his claims was improper because of Schindler's shifting explanations for the October 1992 layoff.  These alone, he insists, are enough to raise a genuine issue as to its discriminatory motives. . . .  However, the reasons

given by Schindler are not incompatible, and therefore not properly described as 'shifting reasons.'"); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733-34 (7th Cir. 2001) ("[Johnson] says that the alleged vacillation in Nordstrom's reasons for failing to promote her creates an issue of fact as to pretext. . . .  [But] pretext [is] demonstrated by not only shifting but also conflicting, and at times retracted, justifications for adverse treatment.  Here, Nordstrom simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote Johnson nor are any of its reasons inconsistent or conflicting.  Thus, Johnson has failed to demonstrate that Nordstrom's legitimate, nondiscriminatory reasons for failing to promote her to beauty director were pretextual.") (cited with approval in *Villiarimo*, 281 F.3d at 1063); *Culver v. Qwest Communications Corp.*, 306 F. App'x 403, 405 (9th Cir. 2009) ("[W]e have made clear that separate reasons offered by an employer are not considered 'shifting' if they are not 'incompatible.'  As the district court correctly concluded, Qwest has consistently cited as the reason for Culver's termination that he was not on company time when he should have been and that he then filled out his time card as though he had been working all day.") (citations omitted).

The cases cited in Dr. Gonzalez's reconsideration motion (Doc. 129 at 12-13) are not to the contrary.  In *Washington v. Garrett*, 10 F.3d 1421 (9th Cir. 1993), the employer offered "fundamentally different justifications" for its elimination of the plaintiff's position via a reduction in force ("RIF")—in a memo, the employer explained that the RIF was the result of "'severe' economic constraints," but in the RIF notice, the employer articulated an "office efficiency rationale."  *Id.* at 1434.  Here, in contrast, USHRN did not switch between rationales—it initially raised the future-funding rationale and consistently maintained that rationale when adding other, non-conflicting rationales.  Similarly, in *Lindahl v. Air France*, 930 F.2d 1434 (9th Cir. 1991), the employer first offered the justification of "overall qualifications" for passing over the female plaintiff for a promotion in favor of a male coworker, then later offered the justification of "computer proficiency."  *Id.* at 1438.  The Ninth Circuit held that because "the computer explanation would have

been such a straightforward answer . . . that one might expect [the employer] would have mentioned it if it really were the explanation," the fact that the employer "instead gave vague explanations about 'overall qualifications' might suggest that the computer explanation was a later fabrication." *Id.* But again, that is not the situation here—UNHRN did not modify or retract the initial rationale it provided for the termination decision ("future funding") but simply identified an additional, non-conflicting rationale ("spate of claims by former employees/mismanagement of subordinates") the following month. It is also worth noting that the retraction/modification of the initial rationale in *Lindahl* was not the only reason the Ninth Circuit found a disputed issue of fact. The court also noted that the plaintiff had presented evidence that another of the employer's proffered rationales ("leadership abilities") was factually untrue, in part because the male candidate "was not well liked by the group," and that the employee responsible for making the promotion decision had "made statements about the candidates' relative qualifications that reflect male/female stereotypes," which in turn "can be evidence of sex discrimination." *Id.* at 1438-39. Those considerations are absent here.[3]

Nor is Dr. Gonzalez entitled to reconsideration based on her contention that, because USHRN approved or acquiesced in her decision to terminate the three employees who later filed grievances, a reasonable juror could find that USHRN did not actually rely on the existence of those grievances as the basis for her termination. As an initial matter, this is different from the pretext argument that Dr. Gonzalez raised in her response to USHRN's summary judgment motion. There, she argued:

> USHRN has omitted or changed its 'spate of claims by former employee,' *i.e.* legal claims against USHRN, basis, and instead relies on the grievances, despite citing no evidence USHRN actually relied on the grievances themselves. USHRN also did not submit 'insubordination' as a basis until June 11, 2021. In fact, USHRN did not believe Dr. Gonzalez was insubordinate a few days after the alleged misconduct, likely because there is no evidence USHRN ever clearly ordered Dr. Gonzalez not to terminate Rachel Rivera, despite Dr. Gonzalez making clear she was replacing Ms. Rivera.

---

[3]      To the extent the reconsideration motion cites out-of-circuit cases that address claims of "shifting rationales" (Doc. 129 at 13), the Court must follow the Ninth Circuit cases discussed herein (as well as the Seventh Circuit's decision in *Johnson v. Nordstrom*, because it was cited with approval in *Villiarimo*).

(Doc. 116 at 10.)  The Court understood this to be an argument over whether the "spate of claims" rationale was shifting, not whether it was inherently incredible.  So did USHRN. (Doc. 131 at 6-7.)  "Motions for reconsideration . . . and are not the place for parties to make new arguments not raised in their original briefs." *Motorola,* 215 F.R.D. at 582.

At any rate, Dr. Gonzalez does not explain why the USHRN board's alleged approval of her decision to terminate the three employees would preclude the board from later deciding, after receiving those individuals' grievances, that Dr. Gonzalez's involvement in the conduct that gave rise to their grievances (and exposed USHRN to potential liability) was a legitimate basis to terminate her. *Cf. Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.  We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision.") (citations omitted).  Moreover, one of the grievances was not based solely on the alleged wrongfulness of Dr. Gonzalez's decision to terminate the employee but also on allegations that Dr. Gonzalez had created a hostile and racially discriminatory work environment.  (Doc. 107-1 at 33 ["Employee A] was terminated three weeks after having filed a grievance with the Board complaining that Dr. Gonzalez was creating a hostile and racially discriminatory work environment . . . ."].)  Dr. Gonzalez does not contend that the board allowed her to create such an environment or approved of the existence of such an environment.

3.      Dr. Gonzalez's third reconsideration argument is that the Court "overstate[d] and misapplie[d]" *Villiarimo*, both as it relates to "shifting rationales" and as it relates to whether "USHRN's true reasons for Dr. Gonzalez's termination were actually consistent with USHRN's asserted reasons, and [whether] USHRN actually and contemporaneously with Dr. Gonzalez's termination relied on the rationales asserted in its motion."  (Doc. 129 at 11-14.)

This argument requires little additional discussion.  As noted in Parts 1 and 2 above, Dr. Gonzalez has not established the existence of manifest error with respect to the Court's

application of the Ninth Circuit's "shifting rationale" case law or with respect to the Court's application of the relevant burdens of proof and production.

4. Although it is not set out in a separate heading, Dr. Gonzalez's final reconsideration argument is that the Court erred by "inferring in USHRN's favor but without factual support that USHRN's actual motives for terminating Dr. Gonzalez were consistent with the rationales USHRN asserted in its motion for summary judgment." (Doc. 129 at 2.) Elsewhere, Dr. Gonzales elaborates: "The Order either expanded the class of possible 'consistent' rationales to any rationale USHRN could have asserted, rather than only those rationales the evidence showed were actually motivating USHRN, *i.e.* its 'true reason[s].' Or the Order made numerous inferences in USHRN's favor, without evidentiary support, to allow it to find that USHRN's later-asserted rationales had actually motivated USHRN, and consequently reframed Dr. Gonzalez's burden of showing a genuine issue of material fact on the issue of pretext." (*Id.* at 15.) In a related vein, Dr. Gonzalez argues that, under *Curley v. City of North Las Vegas*, 772 F.3d 629 (9th Cir. 2014), and *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005), she was not required to discredit all of USHRN's proffered rationales once she cast doubt on some of these rationales. (*Id.* at 15-16.)

Dr. Gonzalez is not entitled to relief based on these arguments. USHRN's Rule 30(b)(6) designee testified there were six legitimate, non-discriminatory reasons for the termination decision. (Doc. 116-2 at 30-31.) In its summary judgment motion, USHRN again argued there were six legitimate, non-discriminatory reasons for the termination decision. (Doc. 106 at 4-6, 14.) Dr. Gonzalez has not established that the Court committed manifest error by concluding that "[a]lthough the verbiage used in USHRN's brief may differ from the verbiage used by USHRN's Rule 30(b)(6) designee, the brief is functionally invoking the same justifications." (Doc. 128 at 14.)

More fundamentally, Dr. Gonzalez has not identified any case suggesting that when an employer's summary judgment brief uses different verbiage than the employer's Rule 30(b)(6) designee when identifying the bases for a challenged termination decision, this alone is enough to create a jury issue on pretext. Nor would such a rule make sense. To

the extent there was any difference between the rationales, the testimony of the Rule 30(b)(6) designee would control. *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("assertions in briefs are not evidence"). Here, the Rule 30(b)(6) designee testified that the four reasons identified in the October 31, 2019 email were four of the six reasons for the termination decision. (Doc. 116-2 at 30.) The email, in turn, stated that two of the reasons Dr. Gonzalez was being terminated were "Lack of funding secured for 2020 and beyond" and "Spate of claims by former employees." (Doc. 106-1 at 176.) As discussed in Parts 1 and 2 above, Dr. Gonzalez did not meet her burden of proffering evidence from which a reasonable juror could conclude that either rationale was pretextual.

Finally, *Curley* does not support Dr. Gonzalez's request for reconsideration. There, an employer offered four justifications for a challenged termination decision but the employee did "not even try to refute [three of] these reasons." 772 F.3d at 633. As a result, the Ninth Circuit held that even if the employee had established that the fourth proffered reason was pretextual, the employer would have been entitled to summary judgment: "Disputing only one of several well-supported, independently sufficient reasons for termination is generally not enough to defeat summary judgment." *Id.* The court also cited cases suggesting that the "general rule" is that "an employee must proffer evidence that shows each of the employer's justifications are pretextual" but clarified in an accompanying footnote that "[a] plaintiff's attack on an employer's legitimate, nondiscriminatory reasons may sometimes defeat summary judgment without discrediting all of the employer's stated reasons," including when "the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them." *Id.* at 633 & n.3, citations and internal quotation marks omitted).

Here, USHRN identified six reasons. As discussed in the summary judgment order and above, Dr. Gonzalez failed to establish that two of those reasons—including the reason ("future funding") that USHRN has consistently articulated at every relevant stage—were pretextual. Under the "general rule" identified in *Curley*, this alone suggests that USHRN is entitled to summary judgment. But even assuming it might have been possible for Dr.

1    Gonzalez to create a jury question on pretext, despite the sufficiency of the "future funding"

2    and "spate of claims" rationales, by establishing that some or all of the other four rationales

3    were pretextual, she failed to do so for the reasons stated in USHRN's response to the

4    reconsideration motion (Doc. 131 at 4-6, 17-18).

5         For example, another of the reasons identified in the October 31, 2019 letter (Doc.

6    106-1 at 176), and later ratified by USHRN's Rule 30(b)(6) designee (Doc. 116-2 at 30),

7    was "Fractured membership and stakeholder relationships."  In the summary judgment

8    motion, USHRN's referred to this rationale as "Plaintiff Alienated Key Partner

9    Organizations."  (Doc. 106 at 6.)  The Court discerns no meaningful difference between

10   these two phrasings, but even assuming the analysis must be limited to the phrasing used

11   by USHRN's Rule 30(b)(6) designee, Dr. Gonzalez failed to submit sufficient evidence to

12   create a legitimate dispute of fact as to pretext.  As an initial matter, this is not a shifting

13   rationale because it simply added to the future-funding rationale and is not inconsistent

14   with that rationale.  On the merits, USHRN not only articulated this rationale (which was

15   enough to meet its burden of production under *Burdine*) but validated it, by presenting

16   evidence that the USHRN board received emails in June and July 2019 in which leaders of

17   related organizations expressed "deep[] concern[]" with various actions taken by Dr.

18   Gonzalez.  For example, one email stated that "it was disconcerting that [Dr. Gonzalez]

19   rejected the proposal made by the members of her own organization, a people-centered,

20   member-led organization no less, in favor of one that no one else in the coalition

21   supported."  (Doc. 106-1 at 179-84.)  USHRN also presented evidence of another episode

22   in which Dr. Gonzalez was involved in a "personal confrontational challenge" with a

23   representative of a different organization, and the "animosity of the . . . dynamics with the

24   other . . . human rights organizations . . . really . . . burned bridges."  (*Id.* at 263-65.)

25   Notwithstanding all of this, Dr. Gonzalez argued in her summary judgment response that:

26        USHRN's reliance on Exhibit 22 [the emails from other organizations] as a
          basis for Dr. Gonzalez's alleged alienation of stakeholders is pretextual, as
27        USHRN's Board contemporaneously approved and facilitated both Dr.
          Gonzalez's limiting of [Employee A's] work as well as his termination.
28        Similarly, it beggars belief that USHRN decided to terminate Dr. Gonzalez
          six months after she engaged in a single off-the-record confrontation, despite

1
2

   USHRN reposting on its own website (and leaving up long after Dr. Gonzalez's termination) a similar confrontational statement attacking the same organization.

3

(Doc. 116 at 10-11.)  This is similar to Dr. Gonzalez's argument regarding the "spate of

4

claims" rationale and it fails for similar reasons.

5

   The fourth reason identified in the October 31, 2019 letter (Doc. 106-1 at 176), and

6

later ratified by USHRN's Rule 30(b)(6) designee (Doc. 116-2 at 30), was "Breakdown in

7

relationship between current board and Executive Director."  In the summary judgment

8

motion, USHRN did not use this phraseology but identified one of the rationales for the

9

termination as "Plaintiff Rejected USHRN's Employment Offers."  (Doc. 106 at 4-5.)  As

10

with the previous example, the Court discerns no meaningful difference between these two

11

phrasings,[4] but even assuming the analysis must be limited to the phrasing used by

12

USHRN's Rule 30(b)(6) designee, Dr. Gonzalez again failed to submit sufficient evidence

13

to create a legitimate dispute of fact as to pretext.  This was not a shifting rationale because

14

it supplemented, and did not conflict with, the future-funding rationale.  On the merits,

15

there is no dispute that Dr. Gonzalez and USHRN had disagreements throughout 2019 as

16

to whether Dr. Gonzalez would accept written contract offers made by USHRN.  Indeed,

17

those facts provide an important backdrop for Dr. Gonzalez's breach of contract claim,

18

which survived summary judgment.  Additionally, Dr. Gonzalez did not dispute in her

19

summary judgment response that a breakdown in the relationship between her and the

20

board could qualify as a legitimate, non-discriminatory reason for her termination—her

21

sole argument on pretext was to contend, incorrectly, that USHRN had "recanted" its

22

rationale based on the breakdown of the relationship.  (Doc. 116 at 10.)

23

   …

24

   …

25

   …

26

   …

27
28

---

[4]  USHRN clarified in its summary judgment reply that "Plaintiff's failure to accept USHRN's employment offers . . . was a key aspect of the breakdown between the USHRN board and Plaintiff."  (Doc. 123 at 8.)

Accordingly,

**IT IS ORDERED** that Dr. Gonzalez's motion for reconsideration (Doc. 129) is **denied**.

Dated this 3rd day of October, 2022.

Dominic W. Lanza
United States District Judge