**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosalee Gonzalez, | No. CV-20-00757-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| US Human Rights Network, et al., | |
| Defendants. | |

The jury trial in this case recently concluded.  Through this order, the Court resolves a handful of unresolved issues and sets the stage for entry of judgment.

**RELEVANT BACKGROUND**

In her operative complaint in this action, Plaintiff Dr. Rosalee Gonzalez ("Plaintiff") asserted claims against Defendant US Human Rights Network, Inc. ("Defendant") for wrongful termination (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), breach of contract (Count Three), and negligent misrepresentation (Count Four).  (Doc. 11.)[1]  Defendant, in turn, asserted counterclaims against Plaintiff for contractual indemnity (Counterclaim One), breach of contract (Counterclaim Two), breach

---

[1] Plaintiff also asserted claims against various individual defendants who were subsequently dismissed for lack of personal jurisdiction (Marcia Johnson-Blanco, Eric Tars, Lisa Crooms-Robinson) or never served (Monami Maulik).  (Doc. 55.)  The Court also notes that, despite Plaintiff's failure to serve Maulik, Plaintiff's claims against Maulik have never been dismissed pursuant to Rule 4(m).  The Court now rectifies this oversight by formally ordering that Maulik be dismissed as a defendant based on Plaintiff's failure to effect service.  (Doc. 6 at 2 ["This order serves as an express warning that the Court will dismiss this action, without further notice to Plaintiff(s), with respect to any Defendant that is not timely served."].)

of the implied covenant of good faith and fair dealing (Counterclaim Three), and unjust enrichment (Counterclaim Four).  (Doc. 58 at 21-25.)

In July 2022, the Court issued a lengthy order resolving the parties' cross-motions for summary judgment. (Doc. 128.)  The Court granted summary judgment in Defendant's favor with respect to Plaintiff's claims in Counts One and Four.  (*Id.*)  As for Plaintiff's other claims and Defendant's counterclaims, summary judgment was either denied or not sought.  (*Id.*)  Nevertheless, in the Final Pretrial Order, Defendant clarified that it only intended to pursue its counterclaim for contractual indemnity (Counterclaim One) and would not be pursuing its remaining counterclaims.  (Doc. 163 at 33-34.)

The trial took place between August 21-24, 2023 and resulted in Plaintiff prevailing on both of her remaining claims and on all of Defendant's counterclaims.

More specifically, as for Plaintiff's remaining claims in Counts Two and Three, Plaintiff's theory of liability was that she entered into an employment contract with Defendant on January 1, 2019 under which she was entitled to certain medical and other benefits (in addition to her salary) and that Defendant breached the contract (and the implied covenant of good faith and fair dealing arising from it) by not providing the agreed-to benefits each pay period.  (Doc. 163 at 5 ["USHRN breached its employment agreement with Dr. Gonzalez each and every time it compensated Dr. Gonzalez as an independent contract, rather than compensating Dr. Gonzalez as an employee, including providing her all benefits to which an employee is entitled."].)  Meanwhile, one of Defendant's defenses was that because breach-of-employment-contract claims are subject to a one-year statute of limitations under Arizona law, Plaintiff became aware of the alleged breach no later than January 15, 2019 (*i.e.*, when she received her first 2019 paycheck without benefits), and Plaintiff did not file this lawsuit until March 18, 2020, Counts Two and Three were wholly time-barred.  (Doc. 163 at 27-29.)

During the charge conference, the Court ruled in Plaintiff's favor on this issue, holding that Plaintiff's claims were not wholly time-barred because a new claim accrued

each time Defendant issued a paycheck without the agreed-to benefits. (Doc. 183 at 1.)[2] Thus, the Court clarified that Plaintiff's claims were at most only partially time-barred, to the extent she sought recovery for damages arising before March 18, 2019 (*i.e.*, more than one year before she filed this lawsuit), and would not be time-barred even as to damages arising before March 18, 2019 if Plaintiff established the applicability of the "acknowledgement of a just debt" exception to Defendant's statute-of-limitations defense. (*Id.*) The Court also denied, without prejudice, Defendant's motion for a directed verdict as to the "acknowledgement of a just debt" issue, explaining that it would conduct a closer examination of the sufficiency of the evidence bearing on that issue after receiving the jury's verdict. (*Id.*)

Based on these rulings and clarifications, the parties agreed to streamline the issues to be presented to the jury by only asking the jury to decide (1) whether a contract was formed; (2) if so, whether the resulting contract (and/or its implied covenant) was breached; and (3) if so, whether Plaintiff should prevail on the "acknowledgement of a just debt" issue. (Doc. 190.) The parties further agreed that Plaintiff's damages would either be $25,643.59 (if Plaintiff did not prevail on the "acknowledgement of a just debt" issue) or $33,622.17 (if Plaintiff prevailed on that issue). (Doc. 183 at 2.) The jury ultimately ruled in Plaintiff's favor on all three of the issues presented for its consideration, concluding that the parties formed an oral employment contract on December 20, 2018; that Defendant materially breached that contract and the implied covenant of good faith and fair dealing arising from it; and that Plaintiff should prevail on the "acknowledgement of a just debt" issue. (Doc. 190.)

As for Defendant's counterclaims, Plaintiff moved for a directed verdict on Counterclaims Two, Three, and Four following the presentation of evidence. (Doc. 183 at 1.) Based on Defendant's non-opposition to the motion and failure to present any evidence in support of those counterclaims at trial, the Court granted the motion. (*Id.*) As for

---

[2] In support of this conclusion, the Court cited *Builders Supply Corp. v. Marshall*, 352 P.2d 982 (Ariz. 1960), *Ancala Holdings, L.L.C. v. Price*, 220 F. App'x 569 (9th Cir. 2007), and *Demasse v. ITT Corp.*, 984 P.2d 1138 (Ariz. 1999).

1 Counterclaim One, the parties agreed before trial that the Court would act as the factfinder
2 with respect to one of its required elements (ratification). (Doc. 163 at 9, 44.) Accordingly,
3 following the presentation of evidence, the Court made oral findings of fact and
4 conclusions of law with respect to the issue of ratification, ruling in Plaintiff's favor. (Doc.
5 183 at 1.)

**ANALYSIS**

As noted, in response to Defendant's motion for a directed verdict on the "acknowledgement of a just debt" issue, the Court denied the motion without prejudice and explained that it would revisit the issue after receiving the jury's verdict. Having now done so, the Court confirms that the evidence was, in fact, sufficient to support the jury's verdict on this issue.

As background, and as explained in more detail in the summary judgment order (Doc. 128 at 24-27), the rule in Arizona is that "[w]hen an action is barred by limitation no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the action out of the operation of the law, unless the acknowledgment is in writing and signed by the party to be charged thereby." A.R.S. § 12-508. This "provision recognizes that the bar of the statute may be waived or suspended by the debtor and prescribes just how this may be done. Before this enactment, it could be done by an oral acknowledgment of the debt, or it might be done by partial payments on the debt. Now, the exclusive method is by a signed written acknowledgment of the justness of the claim, made subsequent to the accrual of the right of action, and either before or after the bar." *Steinfeld v. Marteny*, 10 P.2d 367, 370 (Ariz. 1932).[3]

---

[3] Some decisions by intermediate Arizona appellate courts suggest that, to be effective, an acknowledgement of a just debt must be provided after the expiration of the relevant limitations period. *De Anza Land & Leisure Corp. v. Raineri*, 669 P.2d 1339, 1344 (Ariz. Ct. App. 1983) ("It is necessary to have a new promise made by the debtor after the statute of limitations has run to pay that particular debt. . . . The moral obligation to pay the debt after the statute of limitations has run is sufficient consideration for the new promise to pay the debt."). However, the Arizona Supreme Court's decision in *Steinfeld* holds otherwise—as noted, it states that an acknowledgement provided "before . . . the bar" but "subsequent to the accrual of the right of action" may be effective in "suspend[ing]" the "bar of the statute." *Steinfeld*, 10 P.2d at 370. As a federal court sitting in diversity, this Court is bound to follow *Steinfeld* on this issue. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) ("In determining the law of the state for purposes of

In the Final Pretrial Order, Plaintiff summarized her theory as to this issue as follows: "USHRN acknowledged its just obligation to employ Dr. Gonzalez in May 2019. In response to Dr. Gonzalez's email that USHRN needed to resolve the outstanding issue of providing Dr. Gonzalez a contract, USHRN's then-Board Chair, Marcia Johnson-Blanco apologized to Dr. Gonzalez for her failure to transition Dr. Gonzalez to 'an employee status' and that Johnson-Blanco was 'taking longer than' she 'expected.' Johnson-Blanco's response acknowledged USHRN's just obligation to employ Dr. Gonzalez, as the parties[] had orally agreed. USHRN also acknowledged its just obligation when, in June 2019, it provided Dr. Gonzalez an 'offer letter' back dated to January 2019, when the agreement took effect." (Doc. 163 at 4.) However, at trial, Plaintiff failed to mark and admit a copy of the May 2019 email from Johnson-Blanco containing the apology (although Plaintiff elicited testimony regarding it). Instead, Plaintiff focused on the backdated offer letter sent to her in June 2019.

Despite this somewhat unexpected strategic approach,[4] the evidence was sufficient to survive a directed verdict motion. As Defendant acknowledges (Doc. 163 at 29), the five required elements in this context are that (1) the acknowledgement was in writing; (2) the acknowledgement was signed by the party acknowledging the debt; (3) the acknowledgement sufficiently identified the debt referred to, "though it need not specify the exact amount or nature of the debt"; (4) the acknowledgement contained a promise, express or implied, to pay the debt; and (5) the acknowledgement contained, directly or impliedly, an expression by the party acknowledging the debt of the "justness" of the debt. *Freeman v. Wilson*, 485 P.2d 1161, 1165-66 (Ariz. 1971). Meanwhile, the critical piece of evidence here is Trial Exhibit 22, which is a June 8, 2019 email from one of Defendant's representatives (Johnson-Blanco) to Plaintiff. The email was entitled "Offer Letter." The

---

diversity, a federal court is bound by the decisions of the highest state court."). Thus, it is irrelevant that the acknowledgement in this case was made before the one-year limitations period had expired.

[4] The summary judgment order focused on the May 2019 apology email as the key piece of evidence that created a triable issue of fact concerning the "acknowledgement of a just debt" issue. (Doc. 128 at 24-27.)

text of the email provided as follows: "Good afternoon, Attached for your review and signature is your offer letter with accompanying executive director responsibilities description. As we note in the letter, the Board looks forward to working with you to rebuild USHRN at this very critical point in its history. In solidarity, Marcia." Included as an attachment to the email was an unsigned, two-page offer letter dated "January 2019." It called for an annual salary of $125,000 as well as "health, dental and vision benefits."

A rational juror could conclude that Trial Exhibit 22 satisfies the first two elements of *Freeman*'s five-part test. It is a written document and, although the offer letter itself was not signed by any of Defendant's representatives, the cover email from Johnson-Blanco was signed electronically. As for the third element, although the email and attached offer letter did not *expressly* identify the "debt" as the unpaid employee benefits, a rational juror could infer from the circumstances that this was the debt being referred to—indeed, that is the most obvious inference arising from Defendant's decision to backdate the offer letter to January 2019 and the evidence that Plaintiff had voiced repeated complaints during earlier portions of 2019 about Defendant's failure to provide benefits. *De Anza Land,* 669 P.2d at 1344 ("We also note that the promise to pay may be implied."). For similar reasons, a rational juror could find that the fourth and fifth elements were satisfied—the backdated nature of the offer letter was an implied promise to make good on the overdue benefits and an implied acknowledgement of the "justness" of the debt. *Freeman*, 485 P.2d at 1166 ("'Justness', as used here, refers to the moral obligation which the debtor feels rests upon himself to repay the original obligation. The 'justness' of a debt may be express or it may be implied from the words used in acknowledging the debt. . . . [N]o precise form of words need be used to constitute a legally sufficient acknowledgment.").

Having concluded that the evidence was sufficient to survive a directed verdict, the Court must now resolve a disputed issue it has deferred up to this point—who serves as the appropriate factfinder for purposes of the "acknowledgement of a just debt" issue. In the Final Pretrial Order, Plaintiff argued that the jury acts as the factfinder for purposes of this issue while Defendant argued that "the jury's verdict is advisory only" and that "[t]he Court

must decide the application of the 'acknowledgement of a debt' doctrine" because it presents a "legal rather than factual issue" and "is—at its core—an equitable analysis." (Doc. 163 at 41-44.) The Court concludes that Plaintiff has the better side of this argument. As discussed in the summary judgment order (Doc. 128 at 27), the Arizona Supreme Court has suggested that when, as here, the evidence concerning a written acknowledgement of debt could be reasonably construed as raising conflicting inferences, the issue should be reserved for the jury. *Steinfeld*, 10 P.2d at 370 ("There is no conflict in the testimony on this issue . . . whether these taken all together amounted to the acknowledgment . . . to take the indebtedness out of the operation of the statute. Where the evidence on that point is in writing, as here, we think it is the duty of the court to determine the question rather than to submit it to the jury . . . . *If the evidence on that point were in conflict, or if from it there could reasonably be drawn different inferences, we think it would have been a matter for the jury*; but such was not the case.") (emphasis added). To the extent Defendant has identified conflicting decisions from other courts on this issue, the short answer is that this Court must follow *Steinfeld* in the case of such a conflict. *Albano*, 634 F.3d at 530 ("In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court."). Finally, and in an abundance of caution, the Court clarifies that even if it were required to serve as the factfinder in this circumstance, it would have reached the same decision as the jury, for the reasons discussed in relation to the sufficiency-of-the-evidence analysis.

…

…

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that:

1. Defendant Maulik is **dismissed** based on Plaintiff's failure to effectuate service.

2. Plaintiff is entitled to recover $33,622.17 from Defendant based on her claims in Counts Two and Three. Plaintiff is not entitled to recover from Defendant on any of her other claims or against any of the other defendants who were previously dismissed. Defendant is not entitled to recover on any of its counterclaims against Plaintiff.

3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 1st day of September, 2023.

_____
Dominic W. Lanza
United States District Judge