**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosalee Gonzalez, | No. CV-20-00757-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| US Human Rights Network, et al., | |
| Defendants. | |

Dr. Rosalee Gonzalez ("Dr. Gonzalez") served as the executive director of the U.S. Human Rights Network ("USHRN") from February 2018 until November 2019, when she was terminated. Throughout this period, USHRN classified (and paid) Dr. Gonzalez as an independent contractor rather than as an employee.

In this action, Dr. Gonzalez asserted contract and tort claims against USHRN and four USHRN board members in connection with her purported misclassification and termination. USHRN, in turn, asserted various counterclaims against Dr. Gonzalez. Before trial, the Court dismissed Dr. Gonzalez's claims against the board members and granted summary judgment in USHRN's favor as to Dr. Gonzalez's tort claims and as to the largest category of damages she sought in relation to her contract claims. Additionally, on the eve of trial, USHRN announced it would not be pursuing most of its counterclaims. Finally, a jury trial in August 2023 resulted in a $33,622.17 verdict in Dr. Gonzalez's favor on her contract claims and the rejection of USHRN's remaining counterclaim.

In an order issued on January 12, 2024, the Court addressed "a slew of post-trial

motions" filed by both sides. (Doc. 231 at 1.) One of those motions was a motion for judgment as a matter of law filed by USHRN. (Doc. 213.) As background, USHRN argued at trial that because Dr. Gonzalez became aware of the alleged contractual breach by January 2019 but did not sue until March 18, 2020, and because contract claims are subject to a one-year statute of limitations under Arizona law, Dr. Gonzalez's contract claims were time-barred. (Doc. 231 at 16-17.) "Dr. Gonzalez offered two theories in response: (1) USHRN took steps in mid-2019 to acknowledge its obligation to pay the debt, which had the effect under A.R.S. § 12-508 of restarting the one-year limitations period and rendering her contract claims wholly timely; and (2) at a minimum, her claims for underpayments received after March 18, 2019 were not time-barred because a new cause of action accrued each time USHRN issued a paycheck without the agreed-to benefits." (*Id.*) In the January 12, 2024 order, the Court agreed with both of Dr. Gonzalez's theories and thus upheld the $33,622.17 verdict in full. (*Id.* at 19-26.)

The January 12, 2024 order also addressed Dr. Gonzalez's motion to recover $545,008.50 in attorneys' fees from USHRN pursuant to A.R.S. § 12-341.01(A). (Doc. 206.) USHRN opposed this motion on four grounds: (1) Dr. Gonzales was statutorily ineligible to recover fees under § 12-341.01(A) because her successful contract claims were only incidental to her unsuccessful tort claim; (2) alternatively, the Court should utilize the "totality of circumstances" test, rather than the "net winner" test, when evaluating which side qualified as the "successful party" under § 12-341.01(A) and deem USHRN the "successful party" under that test; (3) further alternatively, even if Dr. Gonzalez qualified as the "successful party," a discretionary fee award was unwarranted under the *Warner* factors[1] because, *inter alia*, USHRN's claims and defenses were meritorious, Dr. Gonzalez unreasonably expanded the litigation and recovered only a fraction of what she sought, the case raised novel legal issues, and an award would discourage litigants from defending legitimate claims; and (4) at a minimum, Dr. Gonzalez's fee request was inflated in various respects. (Doc. 231 at 27-28.) In the January 12, 2024 order, the Court concluded that (1)

---

[1]    *Associated Indem. Corp. v. Warner*, 694 P.2d 1181 (Ariz. 1985).

USHRN's first argument lacked merit; (2) Dr. Gonzalez qualified as the "successful party" under both the "net winner" test and the "totality of circumstances" test; (3) the *Warner* factors, although mixed, favored a fee award; and (4) although many of USHRN's granular challenges to the fee request were unavailing, the request should be reduced because (a) the claimed hourly rates were unreasonably high; (b) certain time entries involved attorneys billing for clerical work, block billing, vague descriptions, or work that was otherwise unreasonably duplicative, excessive, or unnecessary; and (c) because the "vast majority" of the time entries before the July 2022 summary judgment order related to work that "was relevant to both the unsuccessful tort claims and the other (ultimately successful) contract claims," "all time entries before the entry of summary judgment that appear to relate to both the tort claims and the contract claims" should be reduced by 50%. (*Id.* at 29-44.) The Court concluded: "Once all of these adjustments are made, the resulting size of the fee award is $234,881. This is a sizeable but fair award—albeit less than half of the $545,008.50 sum that Dr. Gonzalez requested—in a case that culminated in a jury trial in which Dr. Gonzalez recovered about $33,000 before costs, fees, and interest on her contract claims and defeated all of USHRN's contract-based counterclaims." (*Id.* at 44.)

Both sides filed notices of appeal. (Docs. 233, 234.) In a memorandum disposition issued on February 11, 2026, the Ninth Circuit affirmed in part and reversed in part. *Gonzalez v. U.S. Hum. Rts. Network*, 2026 WL 382043 (9th Cir. 2026). Beginning with Dr. Gonzalez's appeal, the Ninth Circuit rejected all of her challenges, concluding that the Court properly granted summary judgment to USHRN on her tort and punitive damage claims and did not abuse its discretion in denying her motion for leave to file a second amended complaint. *Id.* at *1.

Turning to USHRN's appeal, USHRN only reasserted its arguments as to why Dr. Gonzalez's contract claims should be deemed untimely in whole or in part. USHRN did not, in contrast, raise any challenge to the fee award.[2] On the one hand, the Ninth Circuit

---

[2] USHRN's second brief on cross-appeal presented six arguments: (1) "The District Court Correctly Entered Summary Judgment on Plaintiff's Wrongful Termination and Punitive Damages Claims"; (2) "The District Court Correctly Denied Plaintiff's Untimely Motion to Amend Her Complaint"; (3) "The District Court Erred in Failing to Dismiss

agreed with USHRN that Dr. Gonzalez could not rely on the "acknowledgement of indebtedness" doctrine to sustain the entirety of the $33,622.17 verdict. *Id.* at \*2. On the other hand, the Ninth Circuit rejected USHRN's arguments concerning the "continuous violation doctrine" and held that Dr. Gonzalez could rely on that doctrine to recover "any unpaid employee benefits within one year of when she filed suit." *Id.* That sum, as discussed in a prior order, was $25,643.59, rather than the $33,622.17 figure the jury awarded. (Doc. 231 at 26.)

Following the issuance of the mandate (Doc. 242), the parties agreed to the entry of an amended judgment that reflected this $7,978.58 reduction in Dr. Gonzalez's contract damages (as well as a corresponding reduction in the pre-judgment interest award). (Docs. 244, 245, 246.) Additionally, following entry of the amended judgment, USHRN filed a "motion to reconsider, alter, and/or amend attorneys' fees award." (Doc. 247.) In a nutshell, USHRN argues that in light of the Ninth Circuit's partial reversal of the contract damages award, "this Court should reconsider its attorneys' fees award to Plaintiff and either overturn the award or substantially reduce the award." (*Id.* 6.) The motion is now fully briefed (Docs. 248, 249) and neither side requested oral argument.

USHRN's motion is denied. As an initial matter, it is unclear whether USHRN has preserved its ability to challenge the fee award (and whether the Court possesses authority, consistent with the Ninth Circuit's mandate, to entertain that challenge). USHRN could have challenged the fee award in its appeal to the Ninth Circuit but declined to do so—instead, USHRN only challenged the Court's rejection of its arguments regarding the alleged untimeliness of Dr. Gonzalez's contract claims. Presumably for that reason, the Ninth Circuit did not remand the case for further proceedings—the final sentence of the

---

Plaintiff's Contractual Claims at the Summary Judgment Stage"; (4) "The District Court Erred in Failing to Grant USHRN's Judgment as a Matter of Law on Plaintiff's Contractual Claims"; (5) "The District Court Erred in Determining Application of A.R.S. § 12-508 Was an Issue For the Jury to Decide, Rather Than an Issue for the District Court to Decide"; and (6) "The District Court Erred in Determining That the 'Continuous Violation' Doctrine Applied to Toll the One-Year Statute of Limitations." Second Brief on Cross-Appeal, *Gonzalez v. U.S. Hum. Rts. Network*, 2026 WL 382043 (9th Cir. 2026) (Nos. 24-762 and 23-801).

- 4 -

majority's decision simply states: "AFFIRMED IN PART and REVERSED IN PART." *Gonzalez*, 2026 WL 382043 at \*3.

Given this backdrop, USHRN may have forfeited its ability to raise any fee-related challenge on remand (and sustaining any such challenge would potentially exceed the scope of the mandate). In *Riley v. Kurtz*, 361 F.3d 906 (6th Cir. 2004), the Sixth Circuit addressed an analogous situation. There, similar to here, "[t]he plaintiff won a jury verdict on all four of his claims for a total damage award of $25,003.00" and also filed an application for attorneys' fees, which the trial court granted. *Id.* at 910. There, as here, the defendant filed a notice of appeal but did not challenge the fee award—instead, "[t]he defendant appealed only the jury verdict." *Id.* at 909. There, similar to here, the appellate court partially reversed the verdict. *Id.* at 909-10 ("We overturned the jury verdict on one of the plaintiff's four claims and remanded the case for a new trial on the issue of punitive damages unless the plaintiff accepted a remittitur."). There, as here, the district court entered an amended judgment following remand to reflect the reduction in the verdict. *Id.* at 910 ("The plaintiff chose the remittitur, and an amended judgment for $1,003.00 was entered . . . ."). And there, similar to here, the defendant then asked the district court to revisit the earlier fee award on the ground that "the award of attorney's fees was based on the judgment entered after the jury trial, not the amended judgment, so when the amount of damages was reduced, the district court should have reduced the amount of attorney's fees also." *Id.* at 12. The district court deemed this challenge forfeited because the defendant had not raised a fee-related challenge on appeal and the Sixth Circuit affirmed, holding that "[t]he district court did not err in concluding that the defendant's failure to appeal the award of trial attorney's fees waived any objection he might have had to the award of fees. With a delay of over two years after the order was entered awarding attorney's fees and costs to Mr. Manville for his trial work without a timely appeal having been filed, the defendant's challenge to the award of trial fees comes too late for the district court to consider." *Id.* at 912-13.

With that said, the law is not entirely clear on this issue. For example, if USHRN

had wholly prevailed on appeal and secured a complete reversal of the verdict in Dr. Gonzalez's favor, it would have been permissible for USHRN to file a post-remand motion under Rule 60(b)(5) to vacate the fee award despite USHRN's failure to raise any fee-related challenges on appeal. *Cal. Med. Ass'n v. Shalala*, 207 F.3d 575, 577 (9th Cir. 2000) ("Rule 60(b)(5) is available if a party seeks relief solely on the ground that the underlying merits judgment is reversed."). And courts outside the Ninth Circuit have held that a defendant may also raise a Rule 60(b)(5) post-remand challenge to a previously entered fee award, notwithstanding the failure to challenge the fee award on appeal, "where the merits judgment was reduced to nominal damages on appeal." *Id.* (citing *Maul v. Constan*, 23 F.3d 143, 145, 147 (7th Cir. 1994), and *Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553 (2d Cir. 1995)). *See also Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 801 (5th Cir. 2002) ("Flowers argues that [Rule 60(b)(5)] can not apply in the present case because the underlying judgment was not reversed or vacated. The damages were reduced to nominal but Flowers maintains that because this Court did not reverse the liability aspect of the jury's decision, she is still entitled to attorney's fees as a prevailing party. Flowers['s] argument, however, has no basis in the statute or in equity."). Of course, the circumstances here are different—the overall award in Dr. Gonzalez's favor was not completely reversed or reduced to a nominal sum. But even so, it is possible to discern from these cases the broader principle that whenever a damages award is reduced in some way on appeal, it is permissible for the defendant to raise a Rule 60(b)(5) post-remand challenge to a previously imposed fee award—albeit only a challenge premised on the changed circumstance of the reduced damages award, as opposed to a challenge based on some other ground that the defendant could have raised in the initial appeal.

It is ultimately unnecessary to resolve the complicated issue of forfeiture here because even assuming that USHRN's post-remand challenge to the fee award isn't forfeited, it fails on the merits. The first issue raised in USHRN's motion is whether the Ninth Circuit's decision calls into question whether Dr. Gonzalez still qualifies as the "successful party" in this action. (Doc. 247 at 3-5.) The short answer is that she still

qualifies.

As a threshold matter, and as discussed in more detail in the January 12, 2024 order, trial courts have substantial discretion when determining which test to use to identify the "successful party" in cases involving multiple parties and multiple claims. (Doc. 231 at 30-33.) One of the permissible tests that may be used in this circumstance is the "net winner" test. (*Id.* at 31-33.) In the January 12, 2024 order, the Court provided a detailed analysis as to why Dr. Gonzalez qualified as the "successful party" under that test. (*Id.*) However, in its motion, USHRN ignores the "net winner" test and focuses only on the "totality of the litigation" test and the "percentage of success" test. (Doc. 247 at 3-5.) To the extent this approach was intended to express silent disagreement with Court's decision to utilize the "net winner" test in the January 12, 2024 order, it is unavailing—not only does "[t]he trial court possess[] discretion to determine who is the successful party in multiple-party litigation and in cases where there are multiple-parties as well as multiple-claims," *Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 25 (Ariz. Ct. App. 1990), but any disagreement with the Court's identification of the appropriate test could have been (but was not) raised during USHRN's previous appeal to the Ninth Circuit.

On the merits, Dr. Gonzales still qualifies as the "net winner" following the Ninth Circuit's decision. USHRN recovered nothing on its counterclaims against Dr. Gonzalez, whereas Dr. Gonzalez has now obtained an amended overall judgment (after the partial reversal on appeal) of "$35,323.57, which sum represents the principal amount of $25,643.59 as well as prejudgment interest of $9,679.98." (Doc. 246.) As explained in the January 12, 2024 order, this means that "Dr. Gonzalez [is] the successful party unless her rejection of settlement offers outweighs her success on the merits." (Doc. 231 at 31.) In the January 12, 2024 order, the Court performed a detailed analysis of USHRN's eventual settlement offers of $7,500, $15,000, $50,000, and $100,000 and concluded that each offer was too low to change the "net winner" calculus because each offer was lower than the sum of Dr. Gonzalez's then-overall recovery and the amount of attorneys' fees that Dr. Gonzalez had reasonably incurred on her contract claims at the time of each offer. (*Id.* at

31-33.) The Court has re-run the numbers, and the same conclusion holds even after Dr. Gonzalez's contract damages (and resulting pre-judgment interest) are reduced per the Ninth Circuit's decision.

Dr. Gonzalez also remains the "successful party" under the "totality of the litigation" test after the Ninth Circuit's decision. As explained in the January 12, 2024 order: "USHRN asserts that Dr. Gonzalez's $33,622.17 recovery was about 3% of the approximately $1.1 million she initially sought. Even accepting that denominator, which Dr. Gonzalez contends is inflated, she remains the successful party. Dr. Gonzalez's recovery may be a small percentage of what she initially sought, but USHRN lost on all of its counterclaims. A 3% recovery is more successful than a 0% recovery." (*Id.* at 33.) Based on the Ninth Circuit's decision, Dr. Gonzalez has now obtained about 2% of what she initially sought, rather than the 3% figure referenced in the January 12, 2024 order. But 2% is still a more successful recovery than 0%.

Notwithstanding this, USHRN argues that it qualifies as "the successful party under the 'totality of the litigation'" test because "Plaintiff had substantially more to lose regarding liability and damages" and because it asserted its $20,000 counterclaims "as a defensive measure only in response to Plaintiff's initiation of litigation." (Doc. 247 at 4.) But this is not a new argument that only became available to USHRN, post-remand, based on the Ninth Circuit's partial reduction of Dr. Gonzalez's contract damages. Instead, it simply represents a conceptual disagreement with how the Court understood and applied the "totality of the litigation" test in the January 12, 2024 order. As a result, it is arguably forfeited (as USHRN could have raised this argument in its initial appeal) and does not, at any rate, compel reversal.

USHRN also argues that "[e]ven if this Court finds Plaintiff is still the successful party, this Court should apply the 'percentage of success' test to substantially reduce Plaintiff's attorneys' fees award." (Doc. 247 at 4-5.) But once again, this is not a new argument that only became available to USHRN, post-remand, based on the Ninth Circuit's partial reduction of Dr. Gonzalez's contract damages. USHRN made essentially the same

argument in its response to Dr. Gonzalez's request for fees. (Doc. 215 at 11 n.5 ["The percentage of success test could also be appropriate here . . . . If applied here, Plaintiff would be limited to 3.0% of her reasonable attorneys' fees."].) To the extent USHRN disagreed with the Court's rejection of this approach in the January 12, 2024 order, its remedy was to raise that issue in its appeal to the Ninth Circuit.

It should be noted, moreover, that the Court expressly took Dr. Gonzalez's lack of complete success into account when fashioning the fee award—Dr. Gonzalez sought $545,008.50 but ultimately received $234,881, i.e., about 43% of what she requested, and the bulk of the reduction was due to her failure to prevail on the tort claims that drove her initial damages demand. The $234,881 award represented the Court's best effort to identify the subset of fees associated with Dr. Gonzalez's successful pursuit of her contract claims and successful defense of USHRN's weak contract-based counterclaims. And although the Ninth Circuit's decision means that Dr. Gonzales is entitled to recover about $8,000 less in contract damages than originally contemplated, this modest reduction does not mean (as USHRN argues) that the fee award must be slashed correspondingly by 25%. Even after the reduction, Dr. Gonzalez still substantially prevailed on her contract claims and entirely prevailed on USHRN's contract-based counterclaims. Nothing in Arizona law requires an automatic percentage-based reduction in fees under these circumstances. *See generally Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 933 (Ariz. Ct. App. 1983) ("[T]here is no precise rule or formula for making these determinations.") (cleaned up).

The second issue raised in USHRN's motion is whether the Ninth Circuit's decision requires a reevaluation of how the *Warner* factors apply in this case. (Doc. 247 at 5-6.) The Court concludes that the analysis under the *Warner* factors remains unchanged. In the January 12, 2024 order, the Court specifically acknowledged in relation to the first and fifth *Warner* factors that although most of USHRN's counterclaims and merits defenses were weak, its statute-of-limitations defense was "reasonable" and raised "debatable" questions of law. (Doc. 231 at 34-35.) The Ninth Circuit's decision is entirely consistent with that analysis. Meanwhile, nothing about the Ninth Circuit's $7,978.58 reduction in

the amount of contract damages calls into question the Court's determinations in relation to the remaining *Warner* factors that "USHRN bears significant responsibility for this case's failure to settle," that "USHRN's assertion of weak counterclaims (most of which it abandoned on the eve of trial) also contributed to the settlement failure," that "the third factor favors an award of fees," that "Dr. Gonzalez recovered a very small percentage of what she sought," and that "[a]lthough USHRN is correct that Dr. Gonzalez's ultimate recovery was relatively modest, this does not mean she lacked a legitimate claim.  More important, all USHRN needed to do to avoid a fee award was make a reasonable settlement offer as to her contract claims before she began incurring substantial fees in pursuit of those claims." (*Id.* at 35-36.)

Finally, USHRN complains about Dr. Gonzalez's settlement-related behavior while the case was on appeal, which included making a $950,000 settlement demand and rejecting a settlement offer that was effectively worth $298,586.17 during a mediation performed by a Ninth Circuit mediator.  (Doc. 247 at 6; Doc. 249 at 4.)  Although the Court shares USHRN's frustration with the unreasonableness of those positions, the Court cannot see how this behavior would provide a basis for reconsidering the fee award.  As Dr. Gonzalez notes in her response brief: "[T]his Court's prior award of fees to Dr. Gonzalez came *before* USHRN made the offer on which it relies.  In other words, USHRN's offer was too late; Dr. Gonzalez had already incurred all of those fees.  Similarly, none of Dr. Gonzalez's attorneys fees on appeal are included in this Court's prior fee award."  (Doc. 248 at 4.)  In a related vein, Dr. Gonzalez's behavior during the Ninth Circuit mediation would, if anything, bear on the issue of *appellate* fee-shifting, yet the Ninth Circuit denied USHRN's request to recover its appellate fees (Doc. 248-1 at 4) even though USHRN's request was based in part on Dr. Gonzalez's "unreasonableness at mediation" (Doc. 249-2 at 8-9).

…

…

…

Accordingly,

**IT IS ORDERED** that USHRN's motion to reconsider, alter, and/or amend attorneys' fees award (Doc. 247) is **denied**.

Dated this 24th day of July, 2026.

Dominic W. Lanza
United States District Judge